AMMI R. MITCHELL, in equity, *vs.* OLIVE R. BURNHAM & another.

In arguing exceptions to a master's report, finding that, to entitle the assignee of a mortgager in a bill in equity against the assignee of the mortgagee to redeem the mortgage conditioned for the maintenance of the mortgagee, he shall pay a certain sum incurred for support since the recovery of a conditional judgment on the mortgage, by the mortgagee against the mortgager; the complainant cannot urge that the respondent is estopped by the judgment, unless such objection is specially raised by the exceptions.

Nor, where by the terms of the condition the mortgagee was to be maintained upon the mortgaged premises, can the complainant object to a reasonable allowance by the master, incurred for the support of the mortgagee off from the premises, when the complainant had neglected to furnish means for his support on them.

Nor, for support accruing after an assignment by the mortgagee to one of the beneficiaries named in the condition, when such assignment was not made until a breach of the condition, nor until after an assignment by the mortgager to the complainant, who, with the mortgagee's assent, had undertaken, but failed to fulfill the condition of the mortgage.

Such an assignment by the mortgagee, is not a release and discharge of his claims for support under the condition of the mortgage.

Such assignee of the mortgagee may claim for the future support of the mortgagee and other beneficiaries named in the condition, on the failure of the assignee of the mortgager to furnish it.

Nor can the complainant object to an allowance for support of the mortgagee, actually incurred by the respondent after she had assigned for a time the legal title in trust for the beneficiaries named in the condition.

Nor can the complainant object that the respondent is not charged with the rents and profits after the buildings on the premises were burned, and the complainant had collected the insurance thereon, and placed a tenant of his own on the premises.

Under what circumstances interest may be allowed on the sum found due by the master.

On Exceptions to the acceptance of a report of a master in chancery.

On May 16, 1844, one Benjamin Harnden, being seized in fee of a farm in this county, conveyed the same, by deed of warranty, to his son, B. H. Harnden, who, on the same day, conveyed the same premises in mortgage back to his father, conditioned that, "if the said B. H. Harnden . . . shall at all times . . . well, truly, and sufficiently support and maintain his father, Benjamin Harnden, and his mother, Betsey Harnden, during their natural life, in the house they now live in, and in case of the loss of the present house, in another on the same farm, . . . and provide house and home for his three sisters, Sabra, Olive (respondent), and Hannah, whenever they are at his house, until they shall get married, . . . then the mortgage to be void, otherwise to remain in full force and virtue."

On Aug. 10, 1846, B. H. Harnden, being then in possession, conveyed the premises to one Jameson.

On March 30, 1850, B. H. Harnden, having failed to fulfill the condition in the mortgage, was sued in a writ of entry brought upon the mortgage by the mortgagee, a conditional judgment recovered thereon at the October term, 1851, with damages assessed at $250 and costs, which not being paid, Benjamin Harnden went into possession under a writ of possession, Feb. 14, 1852.

During the pendency of the writ of entry, to wit, on the eighth of February, 1851, Jameson conveyed the premises to the complainant, who claimed the right to redeem them.

On May 2, 1853, Benjamin Harnden conveyed the premises to the respondent, and Betsey Harnden executed the deed in token of her relinquishment of dower.

The respondent supported Benjamin Harnden and his wife, Betsey, on the premises, until September, 1853, when she removed them to Saco, where she supported them until they died, to wit, the former Sept. 6, 1854, and the latter May 3, 1860.

Sabra Harnden was taken sick on the premises, Nov. 2, 1852, and died there from the same sickness, Feb. 19, 1853.

On March 30, 1854, the respondent conveyed the premises to one Jane Osgood, who occupied them, by herself or tenant, until May 3, 1861, when the buildings on the premises were destroyed by fire. Jane Osgood reconveyed the premises to the respondent, Nov. 7, 1866.

It appeared that B. Harnden expressed himself satisfied with his support; but that he never received any support from the complainant.

On Jan. 13, 1855, the complainant called for an account which was declined, and thereafterwards, to wit, on Feb. 15, 1855, he filed his bill to redeem. See *Mitchell* v. *Burnham*, 44 Maine, 286.

The complainant sold the timber from the farm about the year 1860, obtained the insurance on the buildings, and sold and conveyed the farm about the year 1865.

Neither the respondent, nor any person claiming under her, occupied the premises after the destruction of the buildings, but they were subsequently occupied by a tenant under the complainant.

The master's report, returned September term, 1868, charged the complainant:

To the expense of the support (exclusive of medical attendance) of Sabra Harnden, from Nov. 2, 1852, to Feb. 19, 1853.

To the expense of the support of Benjamin and Betsey Harnden, from Oct. 25, 1851 (day of rendition of judgment on the mortgage), to Sept. 6, 1854 (time of Benjamin Harnden's death), medical attendance and funeral expenses.

From the amount of these items, the report deducted the amount of rents and profits from Feb. 14, 1852, when the mortgagee took possession under writ of possession, until his death, and to the remainder added interest from Sept. 6, 1854, to May 3, 1861 (destruction of buildings).

The report also found that from the decease of Benjamin Harnden (Sept. 6, 1854) to the decease of Betsey Harnden (May 3, 1860), the rents and profits were just sufficient for her support and no more. The remaining year's rents and profits (from May 3, 1860, time of Betsey's death, to May 3, 1861, destruction of build-

ings), were not sufficient to pay accruing interest; whereupon the report computed and added interest on the above remainder to the time of the sitting of the court when the report was submitted; the whole sum amounting to $614.96.

To the acceptance of the report the complainant alleged the following exceptions:

1. Because it allows for the support of Benjamin and Betsey Harnden from Sept., 1853 (when they were removed to Saco), to the dates of their death (Sept. 6, 1854, and May 3, 1860, respectively).

2. Because it allows for the support of Benjamin and Betsey Harnden after May 2, 1853, when Benjamin conveyed the premises to the respondent.

3. Because it allows for the support of Benjamin and Betsey Harnden from March 30, 1854, to the dates of their death respectively, although it also finds that the respondent then conveyed the premises to Jane Osgood, who held the respondent's title continually thereafter until Nov. 17, 1866.

4. Because it does not charge the respondent with the rents and profits of the mortgaged premises from May 3, 1861 (time of destruction of buildings), to the time of filing of the report; and

5. Because it allows interest on the amount found due on the mortgage.

*S. C. Strout & H. W. Gage,* in support of the exceptions.

1. The mortgagee and wife were to have their support upon the mortgaged premises and not elsewhere. When they voluntarily abandoned the premises, the expense of their support, at another place of residence, was not a charge under the mortgage.

2. The mortgagee's assignment to the respondent was a release and discharge of all claim for future support by the mortgagee, under the conditions of the mortgage, as he conveyed all his title to the land, which was the only means he possessed of enforcing performance of the conditions. His assignee could take nothing as an indebtedness under it, except amount then due for prior non-sup-

port; and he could not claim anything for future support of the mortgagees.    At most, respondent could claim only the amount of the conditional judgment rendered before that time.    *Bryant* v. *Erskine,* 55 Maine, 153.

3. The respondent should be charged with rents and profits until 1867, when premises were conveyed, since she held a subsisting assignment of a mortgage.    But, in fact, nothing was due. The assessment of damages, for breach of the condition, being for personal services, was entire, and included both past and prospective damages, and no other assessment can be made.    *Philbrook* v. *Burgess,* 52 Maine, 271.    *Sibley* v. *Rider,* 54 Maine, 465.

*Pulsifer & Frost,* for the respondent.

BARROWS, J.    This case comes before us for a hearing upon certain exceptions taken to the report of a master in chancery, appointed in pursuance of an opinion rendered in the case, and reported 44 Maine, 286, holding the complainant entitled to redeem the mortgaged premises, upon payment of such sums as should be found to be legally and equitably due upon the mortgage.

The mortgage was originally given to the father of the defendant by her brother, who received a conveyance of the father's farm, and gave the mortgage to secure the performance of certain covenants and stipulations by him then entered into for the support of his father and mother, upon the farm, during life, and the furnishing of certain privileges to his sisters while they remained unmarried, and other matters which it is not necessary here to specify in detail.

The mortgager, in a few years, parted with his interest in the premises, and the complainant acquired it while a writ of entry was pending in the name of the father, the original mortgagee, to recover possession of the farm for an alleged breach of condition.

In that action a conditional judgment for $250 and costs was made up at the October term, 1851; and the same not being paid, the mortgagee went into possession under a writ of possession, Feb.

24, 1852, and conveyed the farm to the respondent, by deed of warranty, May 2, 1853.

The complainant, holding the title of the mortgager, in January, 1855, within three years after the mortgagee went into possession, tendered to the respondent the amount of the conditional judgment and interest, demanded an account of rents and profits which the respondent refused to give, and offered to pay any additional sum that might be found due upon an adjustment of the rents and profits, and brought his bill to redeem, which he was held by the court entitled to do in these terms: " The conditional judgment having been entered in the action, *Harnden* v. *Harnden,* upon the mortgage, the plaintiff to be entitled to redeem, must pay such further sums, if any, as have since accrued."

The master finds a certain sum accruing since the entry of the conditional judgment which he says the complainant ought to pay in order to redeem.

The most formidable objection to the master's report, and the one now principally relied on in argument by complainant's counsel, is that the respondent is estopped by the conditional judgment rendered upon the mortgage, from claiming anything that might subsequently accrue,—that that judgment must be conclusively presumed to embrace all the damages, both past and prospective, occasioned by the violation of the condition and the failure of the mortgager to furnish support.

But we think it unnecessary to consider whether there is anything in the condition of this mortgage, or in the manner in which the conditional judgment upon it was made up, to distinguish the case in principle from *Philbrook* v. *Burgess,* 52 Maine, 271; and *Sibley* v. *Rider,* 54 Maine, 463.

It is a sufficient answer to the objection, that it is now, for the first time, suggested in an argument to the full court upon exceptions to a master's report in which it does not appear that any such position was taken before the master, or any exception alleged to his ruling upon that point.

We hold that, in a hearing of this description, a party must be

confined to such exceptions as he filed to the master's report, and cannot be permitted to go out of those exceptions to raise other objections never before taken, and which he must be held to have waived. *Pingree* v. *Coffin*, 12 Gray, 315. *Smalley* v. *Corliss*, 37 Vermont, 435.

We have no reluctance in applying the rule to the present case, because in doing so we are only conforming to the view which, until very recently, the complainant and his able counsel seem to have taken of his equitable rights and duties, and to the view which the court entertained in this very case, when the master was appointed,—such an appointment being totally unnecessary if this objection ought to have prevailed.

It is manifest that in the making up of the conditional judgment on the mortgage, no prospective damages for the breach of the condition were included. The report states that testimony was offered tending to prove that the complainant proposed to the mortgagee to provide for the support of the beneficiaries named in the mortgage, and it would seem that the mortgagee assented to this; but the master finds, further, that the complainant did not make adequate provision for their support, and that they received no part of their support from him. Under these circumstances, equity does not permit him to resort to a legal estoppel which has once been so completely waived in order to preclude the mortgagee or his assignee from the benefit of such provision as the mortgage was designed to secure; for equity looks to the intention of the parties rather than to the form of their proceedings, and strives to give effect to such intention when fairly disclosed.

We proceed now to consider the exceptions that were actually taken to the master's doings.

The first exception is to the allowance made by the master for the support of the mortgagee and his wife, after September, 1853, when they removed from the farm, against the position taken by the complainant that by the conditions of the mortgage they were to be supported there and not elsewhere. The exception would be well taken if it did not also appear by the master's report that the complainant, though he assumed the duties and obligations of the mortgager ap-

Mitchell v. Burnham.

parently with the assent of the mortgagee, neglected to furnish the necessary means of support. This being the case, the mortgagee and his wife were under no obligation to maintain themselves upon the farm, but might seek the support required by their age and infirmities where it could best be afforded, which was with their daughter, the respondent; the plaintiff cannot complain if loss and expense have resulted from his neglect to fulfill the obligations which he had undertaken, since it does not appear that the expense incurred for their support, by their daughter, was extravagant or unreasonable.

The second exception relates to the expense for support accruing after the conveyance by the mortgagee to the respondent. This objection we think equally ill-founded. The complainant insists that the conveyance to the respondent was a release and discharge of all the mortgagee's claim for support under the conditions of the mortgage, inasmuch as it passed all his title to the land, which was the only means he had of enforcing the performance of the condition; and that the assignee of such a mortgage could take nothing by such assignment except what was due at the time of the assignment, and could claim nothing for the future support of the mortgagee and other beneficiaries named in the mortgage, in case of the failure of the mortgager or his assignee to furnish it. Not so in either particular.

No good reason can be shown why such a conveyance should be construed as a release to the mortgager, or his assignee, who has (with the consent of the mortgagee) undertaken, but has not performed the duties of the mortgager, from the obligation to afford support according to the conditions of the mortgage. Manifestly, nothing of that sort was intended. True, the mortgagee, for want of the legal title, might be embarrassed in enforcing the claim; but if that is done in the name of the assignee for the benefit of the mortgagee and the other beneficiaries in the mortgage, it is not perceived why the mortgager, or his assignee, has any just cause of complaint. His rights and duties are affected by such assignment only in one respect. If he has notice of it, he must pay any sum that is due as damages for past non-performance to the assignee.

His obligations in all other respects remain the same, and it is solely by reason of his continued neglect to perform those obligations, that the assignee of the mortgagee can claim anything further in the premises.

It was held in *Bryant* v. *Erskine*, 55 Maine, 153, that the interest of the mortgagee was not assignable before breach of the condition, but it does not appear to have been held, in that case, that such assignment released the assignees of the mortgager from the obligation to afford future support in accordance with the conditions of the mortgage. In the present case, there had been both an actual breach and an entry for condition broken before the assignment by the mortgagee.

Doubtless the assignee of the mortgagee would acquire, and could exercise, only such rights as his grantor had in the premises; in this case, the right to hold possession of the mortgaged premises to compel the fulfilment of the condition, was included. Nothing more was required of the complainant than the performance of that condition, but he neglected it. Why should he claim to hold the estate free from the incumbrance which his grantors had placed upon it?

Where, as here, the original mortgagee held the mortgage in trust for himself and others, and the existence of such trust was apparent upon the face of it, his grantee would take subject to the same trust; but when the interest of all the beneficiaries has expired by death, or other limitation (which appears to have happened long ago in this case), there seems to be no good reason why the reasonable expense, incurred by the assignee of the mortgagee, over and above the rents and profits of the estate, in affording the support which it was the duty of the mortgager and his assignees to have furnished, should not be a charge against the estate, or why the assignee of the mortgager, if he seeks to redeem, should not pay it.

It would be adding grievously and unnecessarily to the embarrassments of an aged and infirm mortgagee to withhold from him the power to convey an effective security for such support to one upon whom he can and does rely, when the party who has undertaken to furnish the support fails him.

The third exception taken is to the allowance of any sum accruing for the support of the mortgagees, after the conveyance by this respondent to Jane Osgood, in 1853.

Though Jane Osgood held for a time the legal title, in trust for the beneficiaries named in the condition of the mortgage, the support was actually furnished by this respondent, and at the request of the parties entitled to it under the condition of the mortgage. Since the reconveyance by Jane Osgood to the respondent, inasmuch as the respondent is the sole party interested, and the only one who holds any conveyance from the mortgagee; and, inasmuch as it is not pretended that any payments were made by the complainant to Jane Osgood, or that any support was furnished by her, the fact that she once held a conveyance from the respondent cannot be considered as affecting the rights of the parties. It was rightly held when this case was originally presented, that the complainant's tender was well made to this respondent, though the conveyance to Jane Osgood was then outstanding, for want of notice of that conveyance. Now that all rights or claims under it have been extinguished, so far as the duties, liabilities, and rights of these parties are concerned, it is as though it had never existed. The master allowed the rents and profits of the estate in offset to the support so long as the property was in the possession of the mortgagee, the respondent, or her grantee, Jane Osgood, or any person holding under them, or under any other than the complainant himself. The proper rents and profits to be allowed would be the same, no matter who was in the actual possession of the premises; and no complaint is made of the manner in which they were estimated; for, during a large portion of the time, the report shows that they were found adequate for the support of the parties interested in the condition of the mortgage.

This brings us to the fourth exception, in which complaint is made that the respondent is not charged with the rents and profits since May, 1861.

The claim that she should be so charged comes with ill grace from the complainant, who, as the report shows, at that time, when there was no longer any one to be supported, seems to have bestirred

himself, to have sold the timber from the farm, collected the insurance on the buildings which were burned, and finally to have disposed of the entire premises. The exception cannot be sustained.

Neither can the fifth exception, which relates to the allowance of interest on the sum found due. The complainant's counsel makes no point of this, and, under all the circumstances, we think the interest was properly reckoned and allowed. Not finding any of the exceptions to the master's report sustainable, and being satisfied that in the language of the opinion in *Bryant* v. *Erskine, ubi supra,* it " will mete out equal justice between the contending parties."

> *The exceptions are overruled.*
>
> *Master's report accepted and confirmed.*
>
> *Final decree for redemption to be entered accordingly.*

APPLETON, C. J.; CUTTING, DICKERSON, DANFORTH, and TAPLEY, JJ., concurred.